# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **Derrick Lewis,** | * | |
| **Plaintiff,** | * | |
| v. | * | **CIVIL NO. JKB-18-0261** |
| **The Willough at Naples, et al.,** | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Derrick Lewis ("Plaintiff") filed suit against The Willough at Naples[1] ("Willough") and Oglethorpe, Inc., ("Oglethorpe"), collectively "Defendants," alleging negligence and negligent entrustment based on injuries he sustained while he was a patient at a treatment facility operated by Defendants. Now pending before the Court is Defendants' Motion to Dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF No. 5.) The Motion has been briefed (ECF Nos. 5-1, 6-1, and 7) and no hearing is required, *see* Local Rule 105.6 (D. Md. 2016). For the reasons set forth below, the case will be TRANSFERRED to the United States District Court for the Middle District of Florida.

## I. *Background*

Defendants own and operate a healthcare facility in Naples, Florida "that is licensed to provide psychiatric help and rehabilitation for those suffering from depression, anxiety, and substance abuse issues." (Compl., ECF No. 1-2, ¶ 2.) Defendant Oglethorpe is the parent company of Defendant Willough and is headquartered in Tampa, Florida. (*Id.* ¶ 3.) In addition

---

[1] The named Defendant in this lawsuit is "The Willough at Naples." However, according to Defendants there is no corporate entity by that name, and the correct corporate name is Willough Healthcare, Inc.

to the Willough at Naples, Oglethorpe also "supervises, owns, controls, and manages multiple facilities in the states of Florida, Louisiana, and Ohio." (*Id.*) Oglethorpe, however, "does not have facilities in the State of Maryland." (*Id.*) Both Defendants are incorporated in Florida and "neither company maintains any offices or agents in Maryland." (Picciano Aff., ECF No. 5-2, ¶3.) Nor do Defendants "own any property[,] . . . operate any facility[,] . . . . [or] engage in any business in Maryland." (*Id.* ¶ 4–5.)

Plaintiff, a resident of Maryland, was treated as a "psychiatric and rehabilitation" inpatient at the Willough at Naples starting in September 2015. (ECF No. 1-2, ¶ 5.) On September 8, 2015, Plaintiff's knee was injured by a malfunctioning door at Defendants' facility in Naples, Florida. (*Id.* ¶ 7.) As a result of this incident, "Plaintiff suffered severe bodily injuries, pain, and emotional distress." (*Id.* ¶ 8.) Plaintiff was subsequently injured again on October 31, 2015, when he slipped on the wet floor of a shared bathroom at the Willough. (*Id.* ¶ 11.) Plaintiff alleges this injury was the result of Defendants' refusal to place him in a handicap-accessible single room after his initial injury. (*Id.* ¶ 10.)

## II. *Legal Standard*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) is a test of the court's personal jurisdiction over the defendant. "[W]hen, as here, the court addresses the question [of personal jurisdiction] on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge."[2] *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). In doing so, the court must construe the

---

[2] The Court has discretion to decide a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing where, as here, the existence of personal jurisdiction does not turn on disputed factual questions. *See, e.g.*, *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

relevant allegations in the light most favorable to the plaintiff and "draw the most favorable inferences for the existence of jurisdiction." *Id.* (quoting *Combs*, 886 F.2d at 676).

## III. Analysis

"A federal court sitting in diversity has personal jurisdiction over a non-resident defendant if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). Maryland courts have "consistently held" that Maryland's long arm statute "is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution." *Beyond Sys., Inc. v. Realtime Gaming Holding Co., LLC*, 878 A.2d 567, 576 (Md. 2005). For this reason, when "applying Maryland's long-arm statute, federal courts often state that '[the] statutory inquiry merges with [the] constitutional inquiry.'" *Beyond Sys., Inc. v. Kennedy W. Univ.*, No. CIVA DKC 2005-2446, 2006 WL 1554847, at *3 (D. Md. May 31, 2006) (quoting *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396–97 (4th Cir. 2003)). Indeed, the Court of Appeals of Maryland has used this language itself. *See Beyond Sys.*, 878 A.2d at 580 ("Because we have consistently held that the reach of the long arm statute is coextensive with the limits of personal jurisdiction delineated under the due process clause of the Federal Constitution, our statutory inquiry merges with our constitutional examination.").

However, the Court of Appeals of Maryland has clarified that the "merges" language does *not* eliminate the need to satisfy the requirements of the long-arm statute first. *See, e.g.*, *Mackey v. Compass Marketing, Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006). Rather, due process simply "defines the outer perimeter of Maryland's long-arm statute, but does not eliminate the need to identify a prong of the statute that appears to confer jurisdiction." *Beyond Sys.*, 2006 WL

1554847, at *4. Indeed, a number of courts, including this one, have held that a plaintiff must identify the specific provision of the Maryland long-arm statute that confers jurisdiction. *See, e.g.*, *Gibbs v. Cty. of Delaware*, Civ. No. RWT 15-1012, 2015 WL 6150939 *2 (D. Md. Oct. 15, 2015) ("[A] plaintiff is required to identify a specific provision within the Maryland long-arm statute which authorizes personal jurisdiction.").

Here, Plaintiff has not identified which prong of the Maryland long-arm statute authorizes the Court to assert personal jurisdiction over Defendants. Moreover, it is not at all clear to the Court that Defendants' conduct falls under *any* provision of the long-arm statute. Accordingly, Plaintiff's failure to cite, and the Court's inability to identify, a governing provision of the Maryland long-arm statute provides an independent basis for dismissal or transfer. However, because neither party has briefed this issue, and because it is apparent that the Court may not assert personal jurisdiction over Defendants in a manner consistent with due process (as explained *infra*), the Court does not rely solely on this ground in determining to transfer the case.

In evaluating whether the assertion of specific jurisdiction is consistent with constitutional due process,[3] the Court must consider "(1) the extent to which the defendant purposely availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)). The first prong of this test "articulates the minimum contacts requirement of constitutional due process that the defendant purposely avail [it]self of the privilege of conducting business under the laws of the forum state." *Id.* "[C]ourts have

---

[3] Plaintiff does not argue that Defendants' contacts with Maryland are sufficiently continuous and systematic to support *general* jurisdiction in this state. Indeed, Defendants have negligible contacts with Maryland. Instead, Plaintiff contends only that the Court has *specific* personal jurisdiction over Defendants.

4

considered various nonexclusive factors in seeking to resolve whether a defendant has engaged in such purposeful availment," including:

- whether the defendant maintains offices or agents in the forum state;
- whether the defendant owns property in the forum state;
- whether the defendant reached into the forum state to solicit or initiate business;
- whether the defendant deliberately engaged in significant or long-term business activities in the forum state;
- whether the parties contractually agreed that the law of the forum state would govern disputes;
- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;
- the nature, quality and extent of the parties' communications about the business being transacted; and
- whether the performance of contractual duties was to occur within the forum.

*Id.* (citations omitted).

Plaintiff has failed to allege facts sufficient to make a prima facie showing under this first prong. Plaintiff offers two facts in support of his argument that Defendants purposefully availed themselves of the protection of the laws and courts of Maryland: (1) Defendants have treated four to five patients, including Plaintiff, who are residents of the State of Maryland, and (2) Defendants' "Contact Us" page on their website "allows any person located anywhere in the United States to provide information for potential in-patient status." (Opp., ECF No. 6-1, at 9.) Plaintiff's position, while not entirely clear, appears to be that these facts indicate that Defendants "reached into the forum state to solicit or initiate business." *Consulting Eng'rs*, 561 F.3d at 278. In other words, if Defendants had patients/customers who were residents of

Maryland, then Defendants must have actively solicited business in Maryland.[4] These facts are insufficient to support personal jurisdiction in Maryland.

First, Defendants contacts with Plaintiff and three or four other residents of Maryland, all of which occurred at its facility in Florida, do not support personal jurisdiction in Maryland. The "'minimum contacts' analysis looks to the defendant's contacts *with the forum State itself*, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 134 S. Ct. 1115, 1122 (2014) (emphasis added). Defendants who purposefully "reach[] out beyond" their state and into the forum state, "deliberately exploi[t]" a market in the forum state, or physically enter the forum state may be subject to personal jurisdiction therein. *Id.* (first quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985), then quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984)). Importantly, however, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the *defendant's conduct* that must form the necessary connection with the forum State . . . ." *Id.* (emphasis added). In short, "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 1123.

Here, Plaintiff alleges that this Court has personal jurisdiction over Defendants based solely on Defendants' affiliation with Plaintiff and other residents of Maryland. This is not a sufficient basis for personal jurisdiction. Whatever the scope of Defendants' relationship with Plaintiff and unnamed third parties may have been, it does nothing to resolve the critical question before the Court: What is the scope of the relationship between Defendants and Maryland? Plaintiff has

---

[4] Plaintiff has not alleged any other facts in support of personal jurisdiction, and therefore there is no evidence before the Court that (1) Defendants maintain offices or agents in the forum state; (2) Defendants own property in the forum state; (3) Defendants deliberately engaged in significant or long-term business activities in the forum state; (4) the parties contractually agreed that the law of the forum state would govern disputes; (5) Defendants made in-person contact with Plaintiff in the forum state regarding the business relationship; and (6) the performance of contractual duties was to occur within the forum. Nor has Plaintiff alleged any facts about the nature, quality and extent of the parties' communications about the business being transacted.

6

made *no* allegations of *any* relationship between Defendant and Maryland. Accordingly, Defendants' treatment of Plaintiff and other Marylanders, standing alone, is not a valid basis for this Court to assert personal jurisdiction over Defendants

Second, Plaintiff asserts that Defendants' "Contact Us" page on their website "demonstrates that Defendants advertise their services throughout the United States and not just in the State of Florida." (ECF No. 6-1, at 9.) It is not clear whether Plaintiff believes that this fact supports personal jurisdiction over Defendants or merely is sufficient to warrant further jurisdictional discovery. (*Compare id.* ("At this stage in the litigation, that [sic] Defendants "Contact Us" page supports the Court's power of personal jurisdiction over the Defendants."), *with id.* ("[A]t this stage in the litigation, the Court must permit Plaintiff to engage in limited discovery related to this issue . . . ."). Regardless, Defendants' "Contact Us" page neither supports personal jurisdiction over Defendants nor warrants further jurisdictional discovery.

A court may, consistent with due process, exercise personal jurisdiction over an out-of-state defendant based on electronic contacts with the forum state if the defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan*, 293 F.3d at 714. Courts in the Fourth Circuit evaluate a defendant's electronic activity for internet-based personal jurisdiction according to a sliding scale, wherein "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id.* at 713 (quoting *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).

- At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents

of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper.

- At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction.

- The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* at 713–14 (formatting altered) (quoting *Zippo*, 952 F. Supp. at 1124).

Here, Defendants' website is "neither merely passive nor highly interactive." *Carefirst*, 334 F.3d at 400. Rather, their website (and specifically the "Contact Us" page) falls in the middle ground of the sliding scale: It is a "semi-interactive" website that allows users to "exchange information with the host computer." *Id.* Accordingly, whether the Court may exercise personal jurisdiction over Defendants "is determined 'by examining the level of interactivity and commercial nature of the exchange of information that occurs.'" *Id.* (quoting *Zippo*, 952 F. Supp. at 1126). In *Carefirst*, the Fourth Circuit addressed a similar, "semi-interactive" website and affirmed Judge Blake's dismissal for lack of personal jurisdiction because there was almost no "concrete evidence of online exchanges between [the defendant] and Maryland residents." *Id.* at 401. Similarly, in *Rao v. Era Alaska Airlines*, Judge Grimm found an insufficient basis for personal jurisdiction over the defendant even though the plaintiff, a Maryland resident, had purchased a ticket in Maryland over the internet for use on defendant's airline. In dismissing the case, Judge Grimm observed that,

> Era was not "locat[ing] customers" in Maryland as Plaintiffs suggest; rather, Era was advertising exclusively in Alaska for flights wholly within Alaska, and was making tickets on those flights available on the Internet in a manner that could be accessed by potential passengers anywhere, but used by those passengers *only* if

8

> they first came to Alaska to board their flight. Rather, it was Plaintiffs who sought out Era, using the Internet to reach into Alaska from Maryland, not the other way around.

*Rao v. Era Alaska Airlines*, 22 F. Supp. 3d 529, 540 (D. Md. 2014). By contrast, in *Zippo*, the district court found a foreign defendant was subject to personal jurisdiction because the defendant had "contracted with approximately 3,000 individuals and seven Internet access providers in Pennsylvania" through its website. *Zippo*, 952 F. Supp. at 1126. The Zippo court rejected the defendant's argument that its contacts with forum residents were "fortuitous," observing that it had "repeatedly and consciously chose[n] to process Pennsylvania residents' applications and to assign them passwords . . . . [, and it] knew that the result of these contracts would be *the transmission of electronic messages into Pennsylvania*." *Id.* (emphasis added).

Here, Plaintiff has made no specific allegations regarding the commercial nature of his exchange with Defendants through their website. Indeed, Plaintiff has not even alleged that he ever communicated with Defendants through the "Contact Us" page of their website. And Plaintiff certainly has not alleged that Defendants were "doing business over the internet" with Plaintiff or any other residents of Maryland. *Id.* at 400–01 (quoting *Zippo*, 952 F. Supp. at 1126). Despite the dearth of allegations, it appears that Defendants' website is even less interactive than the websites at issue in *Carefirst* and *Rao*, which were insufficient to confer personal jurisdiction. Defendants' website simply provides a means for consumers to request "more information on [the] company and its services." (Screenshot of "Contact Us" page, ECF No. 6-8.) Defendants do not appear to enter into contracts, solicit or receive funds, or otherwise conduct business through their website. Moreover, the limited interactive capabilities of Defendants' website are not directed at any particular audience, and they certainly are not directed "into Maryland with the manifest intent of engaging in business or other interactions

within that state in particular." *Carefirst*, 334 F.3d at 401. This is simply not sufficiently targeted conduct by Defendants such that they should "reasonably anticipate being haled into court" in Maryland. *Calder v. Jones*, 465 U.S. 783, 790 (1984). Thus, the Court lacks personal jurisdiction over Defendants.

The Court briefly notes that jurisdictional discovery is not warranted. Plaintiff has proffered only one additional fact that may be demonstrated by additional discovery. He contends that "determining how many persons from the State of Maryland submit information to the Defendants through Oglethorpe, Inc.'s 'Contact Us' page" may lead to an inference that Defendants "actively advertise into the State of Maryland." (ECF No. 6-1, at 9.) Plaintiff is mistaken. The number of Maryland residents that unilaterally contact Defendants through their website is irrelevant to *Defendants' relationship with Maryland*. *See, e.g.*, *Walden*, 134 S. Ct. at 1123 ("Due process requires that a defendant be haled into court in a forum State based on his *own* affiliation with the State . . . ." (emphasis added)). Indeed, such information would merely cloud the proper analysis, which focuses on "the level of interactivity and commercial nature of the exchange of information that occurs." *Carefirst*, 334 F.3d at 399 (quoting *Zippo*, 952 F. Supp. at 1124). This analysis can be, should be, and has been conducted by the Court based solely on the information, characteristics, and capabilities of Defendants' website. In other words, Defendants' "Contact Us" page is what it is, and one thing is clear: It is not directed "into Maryland with the manifest intent of engaging in business or other interactions within that state in particular." *Id.* at 401. This conclusion remains equally valid whether 1 or 100 Marylanders filled out Defendants' contact form. Accordingly, Plaintiff's request for jurisdictional discovery will be denied.

In light of the above holdings, and in the interests of justice, the Court will transfer this case to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1406(a). *See, e.g.*, *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962) (affirming transfer of case over which transferor court lacked personal jurisdiction).

*IV. Conclusion*

For the foregoing reasons, an Order shall enter TRANSFERRING the case to the United States District Court for the Middle District of Florida.

DATED this 21st day of May, 2018.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge